Our good morning, Your Honor. With your permission, I would like to say that the critical issue here is how an injunction for non-restraint was being applied to drive my client out of the room. That is, if I may, Your Honor, I would like to say that the critical issue here is how an injunction for non-restraint was being applied to drive my client out of the room. With your permission, I would like to say that the critical issue here is how an injunction for non-restraint was being applied to drive my client out of the room.  an injunction for non-restraint was being applied to drive my client out of the room. Did you say it was a single product? A single product that was subject to an analysis of infringement. But I thought the claim chart had two series of products. Well, it was a single product, and it was generally saying, oh, and all the other products like this, whatever that means. No, no, but that's not my recollection. I thought the claim chart listed two series of products, one of which I think was called FS, and I forget what the other one was called, as being infringing. No? Well, it can't be a series of products because the products are different. It would be like saying Diet Coke and Coke. Where's the claim chart in the appendix? The claim chart. Where do I find it in the appendix? I don't recall right now, but I do want to point out that in the motion for default judgment, that the appellees at pages A12, A13, and A14 list, without any infringement analysis, the products that they are saying are infringing, and it includes, for example, a mounting point, which is, and a screw. Where are you reading from? This is appellee's brief. Where in the appendix? The brief here? Yes, Your Honor. It's appellee's brief, A12, A13, and A14. The red brief? Correct. It's in the appendix. There are no A numbers in here. What are you talking about? It's in the appendix. In the appendix? Yes, Your Honor. In the red appendix? Correct, the red. I don't have any A12 in the red. In the red appendix? Yes, Your Honor. Or is there any page A12? A12. A12. Yes, Your Honor. It's appendix A12, A13, and A14. So, is your contention that your client was found in contempt for selling the products that are listed here? Yes, Your Honor, and they were driven out of business, and there is no more money. And is your contention that some of these products were not alleged to be infringing in the original infringement action? Yes, Your Honor. Which ones? I can't identify them all at this moment. Well, which ones can you identify? As a matter of fact, I had pointed this out to the court, but it was unsuccessful. For example, at page A12, the ball head connector for the carrier speed sling strap. And the mounting plate? And the mounting plate itself. Some of the obvious ones are A13. If you thought that the contempt order was overbroad and covered products that weren't subject to the original infringing action, why didn't you appeal that contempt order? Because my client ran out of money and lost confidence in the court system. Well, then why are you here? At my own expense, because I thought this was worth addressing. Were you counsel in the contempt action? I'm sorry? Were you counsel in the contempt proceeding? Yes, I was. And they just got disgusted with the system. They come from a country, from another country, and they didn't have confidence. May I point out the specific problem in this case? In my complaint, in Exhibit B... Isn't this a collateral attack? I'm sorry? I said, is this not a collateral attack? No, Your Honor, because the problem here is not whether or not the injunction is valid. It's how it was used. But the problem is, isn't it a collateral attack on the contempt judgment? Because the contempt judgment found your client in contempt for selling these things. They may not have been within the scope of the original judgment. But aren't you trying to use this action to set aside the contempt, essentially? Not at all. Why not? But they wrote to a supplier, and they said... No, but explain to me why that's not the case. Because, for example, if they take an order that says you can't infringe the patent, and they write to somebody who's making a table for my client and says, by the way, you know, you can't infringe this patent. Did they claim anything that was not within this contempt order? Well, if I could read you the language of the letter, you will see that that's the case. The letter in the appendix? Yes, the letter in the appendix. Where's the letter in the appendix? It's at my appendix 116. The red appendix? Blue.  Oh. 116? Yes, Your Honor. That seems to be in Japanese. 116, or at least the top of it is. And it's an announcement. Yes, it's an announcement. And I used Google Translator to bring it into English. And how do we know that this letter is accusing products other than those involved in the contemporary? Well, if I could read the portions that are relevant, I think you'll see. If I may, would your permission? Go ahead. On 116, it says, for example, knowledge of the patent, anyone who engages in… Where were you reading from? On 116, the last paragraph, which I've underlined, the relevant parts. So, for one thing, it says, knowledge of the patent makes somebody a willful infringer. Yes, but I think what we're asking you is that if they are accusing you of infringement with respect to other products not involved in the contempt proceeding, then there may be an issue as to whether it's appropriate in this action to seek a declaratory judgment that those products are not infringing or that the patent is invalid, possibly. Yes, that's right. So what we're trying to ask you is, are they pursuing products as being infringing that weren't involved in the contempt action? Page 117, the next page, the top paragraph, it says, BlackRapid can legitimately keep similar camera sling products off the market. I have no idea what that means. Then why are you here? Because they have not identified what is infringing. Has there been any action taken against products which are not listed in that contempt? No, Your Honor. Then you've answered every question I have. Well, they drove my client out of business because all his suppliers were frightened. They don't know what a similar camera… My question, counsel, was, has there been any action taken against products which are not listed in the contempt? And your answer was no. That's correct, but the issue which brought the complaint was unfair business practice and intentional cautious interference with a business relationship. By sending a letter like this at Russell and Exhibit C out, they frightened away the suppliers and drove my client out of business. So I'm not saying that the injunctions were… To which supplier was that sent? I'm sorry? To which supplier was the document, which appears to be a notice rather than a letter, to which supplier was it sent? It was sent to Chinese publications in order to warn the Chinese suppliers against providing products. Do you have any evidence in the record that a supplier read or noticed that document and took action based upon it? No, Your Honor, but may I draw attention to the second letter that's here? It's at Appendix 120. I've underlined the relevant part. It says this coverage is not limited to carry speed, which by the way is a trademark. So any product… So this was a seller and in fact asked me to bring an action, which I did in the Southern District, but when the supplier was cut off, they also ran out of money and nothing could be done with the case. Okay, Mr. Fink, do you want to save your rebuttal time? Yes. Here, we'll give you two minutes. Okay, thank you. Mr. Ruhm, is that how you pronounce it? Ruhm, Your Honor. Ruhm, okay. But I think you're in the majority in that pronunciation. If it pleases the Court, my name is Warren Ruhm. I represent Black Rapid and the respondent in this matter. I think it's a little troubling that you have a default judgment. You get an injunction which covers potentially products not involved in the original infringement action, and then you seek contempt. I mean, is it true that some of the products that were the subject of the contempt action were not the products that were originally accused in the infringement action? No, it's not. Well, how do I know that that's correct? Well, I think you can look to a couple of things. You can look to the claim chart, which is located at A763-74. 763? I believe that's correct. I'm going from the reference in our brief. And I hope that's correct. I don't have the appendix in front of me. You were looking for that. That's part of it. That's the pinpoint site it was in. It includes, you know, you really should bring your appendices and briefs to the argument. This lists claim 15, and it says, imported offer to sell solder used for the United States Million Ways camera straps, such as Cary Speed FS and CS series. Well, but that doesn't mention these other items, which are apparently the subject of the contempt action, such as the mounting plate and the bullhead connector. Well, you're saying a coupler is the same as a mounting plate. It's part of the invention. If you take a look, and if you take a look at what the court found. Well, but something that's part of the invention can't be enjoined just because it's part of the invention. If you take a look at what Judge Otero did below,  the default judgment, which required him to take everything in the complaint. No, but parts of the invention can't have been accused in the original infringement action of infringing. That's correct. Okay, but here we find that once you get to the contempt proceeding, these products are in fact found, the sale of these parts of the invention, are found to be a violation of the injunction. I don't understand that. I think you'd have to take a look at what Judge Otero had before him, but more importantly. No, but try to answer my question. You understand my concern. I see that the FS and CS straps were accused in the original infringement action. That's correct. What I don't understand is how you can get an injunction against parts of the invention and how you can be held in contempt for selling parts of the invention as opposed to the whole invention. But they were selling the whole invention, which could be then disassembled presumably to its component parts. These straps have a bunch of different pieces. What was being enjoined, my understanding, was the sale of the infringing straps that have a bunch of different parts in them. And that's what the injunction was. The injunction was enjoining further infringement of the 727 patent. It wasn't an injunction against all of these products. You're not supposed to get an injunction like that. I'm sorry? You're not supposed to get an injunction like that. You're supposed to get an injunction that says you're enjoined from selling the accused products and anything that's not colorably different. I think that's what Judge Otero did. That's not what he said. Well, he enjoined further infringement based upon the evidence that was placed in front of him in the claim chart. The correct thing to do, I think, if there was a problem with the way we were seeking to enforce the injunction is to go back to Judge Otero and take it up with him and say your order is being improperly enforced. He maintained jurisdiction to enforce his order and not to collaterally attack the proceedings in California, which is what this lawsuit is all about. It's what the Texas court found. And the Texas court really established what I'm here to talk about today, which is too little, too late. There were five elements. Do you read the original injunction then as only covering the camera straps? Yes. Yes, I think that's what Judge Otero said. Well, then how could he be held in contempt for selling parts of the camera straps? I don't think that's what was being done. And I think that Judge Otero said, you can't sell these camera straps. I found that at least Claim 15 was infringed. Is the strap included in those mounting plates? Yes. As it was being sold, the strap is without any use if you don't have the plate to mount the camera upon. Perhaps it would be useful to explain how this strap works because it's not particularly intuitive. I guess that's why it's an invention. It comes across the body this way. It's secured underneath the arm with a strap. And then the camera, so if you've got your Nikon single lens reflex camera, has a mounting plate that's a place on the bottom of it where the tripod would hook into. And then that is attached to what you can think of as a carabiner that moves up and down across the strap that's across your body. And at rest, the camera sits on your hip with the lens facing backwards usually. And if I wanted to take a picture of Judge Hughes, I can very easily then swing it up and put it either out in front of me, if it's got a display on the back, or bring it to my eye and it's secure. If I drop it, it's going to fall back into its place. So there's a mounting bracket, there's the swivel, there's the carabiner piece, and then the strap itself, which is mesh webbing. So can you take it apart and say, well, the mounting bracket is not an integral part of it, of course not. You would have no place to attach the camera. All of which the rulings before you from the Texas court said should have been brought up back in California. The complaint should have been answered. The motion for default should have been opposed. The injunction should have been fought. The injunction should have been sought to be modified. You should have appealed it if you didn't like what I did. And instead we find ourselves in Texas, being accused of enforcing a valid district court judgment and a valid injunction. And the Texas court says, you're way too late. You've waived. You're asking me to ignore the doctrine of collateral estoppel, of res judicata. Res judicata means a matter judged. This matter was very much judged in California. No appeal was taken. And frankly, if a million ways approach were to be condoned, no judgment would ever be final. Certainly no infringement judgment, because it would always be subject to collateral attack anywhere where the injunction was sought to be enforced. I would like to turn to something that wasn't addressed, and that was the invalidity of the patent based on material prior art, unless the court understands our position on that, and it doesn't need to be addressed. I think we're okay on that. Okay. And then finally there's the dismissal of the common law claims by the Texas court. Once again, the Texas court found that those were waived by failing to address them in the dismissal. There was no mention in the opposition to our motion to dismiss of the common law claims. That was fairly clear. But I think if you read the appellant's briefing before you, and it's somewhat difficult to parse this, I believe what he's saying is that the common law claims, the non-patent claims were dismissed on the basis of res judicata. That's not correct. I don't believe that's what Texas did. I think that's what Texas could have done. But that's not what happened. Waiver was found, but also there was a Twombly dismissal, that there was not well-pled claims before the Texas court that it would act upon, and so it was permitted to dismiss them on 12B grounds. I just wanted to address that because it was not clear from the briefing. Unless the court has other questions for me, I will send it to the balance of my time. No, thank you. Thank you for your time. Mr. Fink, you have two minutes. Thank you, Your Honor. She's got the time of two minutes. You are correct that the injunction was for the entire unit, not the pieces, and let me point that again to Appellee's brief at page 812. At the top, the heading is, Million Way violated the injunction by continuing to sell and offer to sell its infringing carry speed camera swing products. And what I pointed out in the table that they presented is they included a plate. So is it all right if you're infringing to instead disassemble the infringing product and sell the pieces? That's a tough question. It depends upon if you're selling it and you tell people, assemble this at home. So that's an issue. But my concern here is that a letter was written to a company. It did not identify the specific products. It did not provide a basic infringement analysis. It merely said, if you're selling anything on this product line, you're in trouble. You're liable for trouble damages and attorney fees because I told you there's a patent here. Okay. Anything else, Mr. Fang? I have nothing else. You have no questions? I don't think so. Thank you very much. Thank you, counsel. The case is submitted and that concludes our session for today.